**Marlon R. WADE, Plaintiff,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendant.**

**No. CIV.A. 01–0804–CG–S.**

United States District Court, S.D. Alabama, Southern Division.

Sept. 19, 2002.

Harry V. Satterwhite, Charldon Mark Erwin, Satterwhite & Erwin, L.L.C., Mobile, AL, for plaintiff.

Kori L. Clement, Hare, Hair & White, P.C., Birmingham, AL, for defendant.

## ORDER

GRANADE, District Judge.

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and there having been no

objections filed, the recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) and dated August 26, 2002 is **ADOPTED** as the opinion of this Court.

## REPORT AND RECOMMENDATION

STEELE, United States Magistrate Judge.

This matter is before the undersigned on the motion of defendant Nationwide Mutual Fire Insurance Company ("Nationwide") to disqualify counsel for the plaintiff. (Doc. 19). The District Court has referred the motion to the undersigned for report and recommendation. (Doc. 29). Nationwide's motion incorporates its supporting memorandum, to which the plaintiff has responded. (Doc. 24). After careful consideration of the foregoing materials and of the parties' arguments expressed in open court on August 15, 2002, the undersigned respectfully recommends that the motion to disqualify be denied.

## FACTUAL ASSERTIONS [1]

The plaintiff, Marlon R. Wade, is represented in this action by Harry Satterwhite and Mark Erwin of the law firm of Satterwhite & Erwin, L.L.C. It is uncontroverted that Satterwhite and Erwin were previously employed as associates by the law firm of Janecky, Newell, P.C. ("Janecky Newell"), but the beginning date of their employment is in dispute. Nationwide has asserted that Satterwhite and Erwin were employed by Janecky Newell as of October 1998, (Doc. 19 at 1), an allegation denied by Satterwhite and Erwin. (Doc. 24 at 2–3). At oral argument, Satterwhite asserted that he became employed with Janecky Newell in November 1998 and that Erwin became so employed in March 1999.

At oral argument, counsel for Nationwide asserted that Satterwhite's employment with Janecky Newell ended February 2, 2001 and that Erwin's employment ended May 31, 2001. Satterwhite did not respond to these assertions. It is uncontroverted that the complaint was filed in state court in October 2001, after Satterwhite and Erwin ended their employment with Janecky Newell.

Based on the parties' briefs, it is uncontroverted that before, during and after the association of Satterwhite and Erwin with Janecky Newell, Nationwide was a client of Janecky Newell. (Doc. 19 at 4; Doc. 24 at 2–3).

The parties agree that, at all relevant times, plaintiff Wade owned two houses covered by a policy of insurance issued by Nationwide and that both were damaged by Hurricane Georges in the fall of 1998. (Complaint, ¶¶ 4–5; Doc. 4, ¶¶ 4–5). The complaint alleges that, by letter dated October 23, 1998, Nationwide refused to pay benefits with respect to one of the damaged houses. The complaint further alleges that, on July 23, 2001, Nationwide issued a second letter modifying its reasons for the denial. (Complaint, ¶¶ 8, 10). It appears to be uncontroverted that Charlie Potts, a partner with Janecky Newell, rendered professional services to Nationwide concerning Wade's claim before Nationwide issued the October 1998 letter. (Doc. 19 at 1–2, 4–5, 5–6; Doc. 24 at 2–3). At oral argument, counsel for Nationwide asserted that Potts continued to render professional services to Nationwide concerning Wade's claim after October 1998, culminating in the July 2001 letter. Nationwide intends to offer Potts as a witness at trial. (Doc. 19 at 5).

---

1. The parties submitted no evidentiary materials in connection with the motion to disqualify. At the conclusion of oral argument, Nationwide's counsel insisted that the parties' briefs require the granting of Nationwide's motion and affirmatively disavowed any desire to submit evidentiary materials.

Despite an isolated suggestion to the contrary, (Doc. 19 at 9), Nationwide does not assert that Satterwhite and/or Erwin actually assisted Potts in providing professional services to Nationwide in connection with Wade's claim.[2] Satterwhite and Erwin have denied any such assertion, (Doc. 24 at 2–3), including at oral argument.

It is uncontroverted that Satterwhite and Erwin, during their employment with Janecky Newell, provided professional services to Nationwide on various matters. (Doc. 19 at 4; Doc. 24 at 2–3). Neither party has identified any of these matters or provided any detail concerning them or their relation to Wade's claim.

At oral argument, counsel for Nationwide asserted that, by virtue of their association with Janecky Newell and/or representation of Nationwide, Satterwhite and Erwin obtained "proprietary" and "confidential" information concerning Nationwide's policies, manuals, training and claims-handling procedures. She did not identify any specific information obtained or explain its significance to Wade's lawsuit.

### FINDINGS OF FACT

Because the parties offered no evidence, the only facts that can be found are those agreed to by the parties and those that follow from such agreed facts. The undersigned accordingly makes the following findings of fact:

Charlie Potts, a partner with Janecky Newell, rendered professional services to Nationwide in connection with Wade's claim. During their employment with Janecky Newell, Satterwhite and Erwin rendered professional services to Nationwide in connection with matters other than Wade's claim.

As discussed in the following section, Nationwide bears the burden of proving the elements necessary to support a disqualification of counsel. The following assertions relevant to Nationwide's motion cannot be found favorably to Nationwide due to a lack of record evidence to support them:

That Satterwhite and/or Erwin rendered professional services to Nationwide in connection with Wade's claim;

That the matters as to which Satterwhite and/or Erwin rendered professional services to Nationwide bear a substantial relation to Wade's claim;

That Satterwhite and/or Erwin, in the course of their representation of Nationwide on other matters, obtained any confidential information relevant to Wade's claim.

### CONCLUSIONS OF LAW

■ Nationwide argues that the disqualification of Satterwhite and Erwin is required for the following reasons: (1) to preserve the confidentiality of information provided by Nationwide; (2) to avoid a conflict of interest; (3) to avoid an appearance of impropriety; and (4) to preserve the integrity of these judicial proceedings. (Doc. 19 at 2, 6–9). The burden is on Nationwide to establish that disqualification of counsel is warranted. *E.g., Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1028 (5th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

Attorneys practicing in the Southern District of Alabama are required to abide by the Alabama Rules of Professional Conduct and, to the extent not inconsistent,

---

**2.** At oral argument, counsel for Nationwide asserted that Satterwhite contacted Nationwide's adjuster on the Wade claim "prior to filing this lawsuit." The undersigned construes this unamplified statement as an assertion that contact was made after Satterwhite's employment with Janecky Newell ended.

the American Bar Association ("ABA") Model Rules of Professional Conduct. Local Rule 83.5(f). These sources provide the body of the ethical rules governing motions to disqualify in this Court. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 728 n. 4 (11th Cir.1988); *Waters v. Kemp*, 845 F.2d 260, 263 n. 9, 265 (11th Cir.1988); *Duncan v. Merrill Lynch*, 646 F.2d at 1022 n. 2. Their interpretation and application, however, is controlled by federal law. *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir.1976); *see also In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1344 (5th Cir. 1981); *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir.1992).[3]

■ Disqualification may be either "actual," based on the attorney's own relation to the movant, or "imputed," based on the attorney's relation to another attorney disqualified from representing the movant. Nationwide's motion implicates both forms of disqualification.

## I. Actual Disqualification.

### A. Confidentiality and Conflict of Interest.

■ Motions to disqualify based on confidentiality and conflict of interest are governed by the same two-part test. *Compare Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir.), *cert. denied*, 528 U.S. 817, 120 S.Ct. 57, 145 L.Ed.2d 50 (1999)(conflict of interest) *and Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 528, 530 (5th Cir.1981)(same) *with Duncan v. Merrill Lynch*, 646 F.2d at 1027–28 (confidentiality) *and United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir.1979)(same) *with American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir.1971)(both). The movant must first establish that an attorney-

client relationship formerly existed between the movant and its opponent's counsel. *E.g., Cox v. American Cast Iron Pipe*, 847 F.2d at 728; *Duncan v. Merrill Lynch*, 646 F.2d at 1028; *In re Corrugated Container*, 659 F.2d at 1345; *American Can v. Citrus Feed*, 436 F.2d at 1129. As noted, it is uncontroverted that Satterwhite and Erwin both rendered professional services to Nationwide while associated with Janecky Newell. The first element of Nationwide's motion to disqualify is therefore satisfied.

■ When a motion to disqualify is based on confidentiality or conflict of interest, "the moving party must prove ... that there is a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary." *Duncan v. Merrill Lynch*, 646 F.2d at 1028. If the movant shared confidences with former counsel, and if these confidences are relevant to the present matter, a genuine threat exists that the attorney will use the confidences against his former client. *Id.* The second element necessary to support disqualification, discussed below, identifies the circumstances under which the requisite sharing of relevant confidences may be shown.

■ To support disqualification based on confidentiality or conflict of interest, the movant must establish either: (1) that the attorney actually obtained confidential information in connection with his prior representation of the movant that is relevant to the present matter; or (2) that one or more of the matters as to which the attorney rendered professional services to the movant bears a "substantial relation" to the present matter. *E.g., Smith v. White*, 815 F.2d 1401, 1405 (11th Cir.1987);

---

**3.** Except for *Dresser Industries*, all cases cited herein are binding decisions of the Eleventh and former Fifth Circuits. Most of these cases applied various versions of the ABA's rules. Alabama's rules are based on the ABA's model rules.

*Cossette v. Country Style Donuts,* 647 F.2d at 530; *Duncan v. Merrill Lynch,* 646 F.2d at 1032; *Church of Scientology v. McLean,* 615 F.2d 691, 692 (5th Cir.1980).

█ The law indulges a presumption that, in the course of his former representation, the attorney received the movant's store of confidential information relevant to that representation. *Cox v. American Cast Iron Pipe,* 847 F.2d at 729; *In re Corrugated Container,* 659 F.2d at 1346. This presumption is irrebuttable and may not be countered with evidence that, in fact, the movant did not share confidences with former counsel. *Id.* at 1347–48; *see also Cox v. American Cast Iron Pipe,* 847 F.2d at 729 (describing the presumption as "virtually" irrebuttable). This presumption effectively establishes the attorney's receipt of confidential information; whether there exists the requisite genuine threat that the attorney will *use* the confidential information depends on whether the information is relevant to the present matter.

█ If the former representation is substantially related to the present representation, the law irrebuttably presumes that the confidences shared in the prior representation are relevant to the present representation. *Freund v. Butterworth,* 165 F.3d at 859; *Duncan v. Merrill Lynch,* 646 F.2d at 1028; *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,* 559 F.2d 250, 252 (5th Cir.1977); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976). If the former representation is *not* substantially related to the present representation, the movant must affirmatively show that the confidential information received by the attorney in the former matter is relevant to the current matter. *Smith v. White,* 815 F.2d at 1405; *Duncan v. Merrill Lynch,* 646 F.2d at 1031. More precisely, the confidential information received by the attorney in the former representation must "be akin to the present action in a way reasonable persons would understand as important to the issues involved." *In re Corrugated Container,* 659 F.2d at 1346.[4]

█ Whichever tack is taken to establish the second element required for disqualification, the movant may not rest on assertions made in brief. Actual, record evidence that confidential information relevant to the present matter was provided the attorney in the former matter, or that the former and current matters are substantially related, is mandatory. Absent such evidence, a motion to disqualify necessarily fails. *Smith v. White,* 815 F.2d at 1406 (the petitioner "completely failed to present any evidence at the evidentiary hearing showing that [former counsel] in fact learned any relevant confidential information during his prior representation"; the petitioner's "conclusory allegation" in his brief was "inadequate" to carry his burden); *Cossette v. Country Style Donuts,* 647 F.2d at 530 ("There was no demonstration that any confidential information the Maguire firm may have acquired during Bogner's representation of Cossette would be of any value to the CSD firm in resolution of [the present matter]."); *Church of Scientology v. McLean,* 615 F.2d at 692 ("The church has not offered a scintilla of evidence that [former counsel] has any confidential information

4. The ABA's model rules have been significantly modified since the former Fifth Circuit first ruled that a movant could obtain disqualification even absent a substantial relation between the former and current representations. Both the model rules and Alabama's analog to them presently appear to limit disqualification to "the same or a substantially related matter." Model Rules of Prof'l Conduct R. 1.9(a); Ala. Rules of Prof'l Conduct R. 1.9(a). Thus, a substantial relation is now presumably a prerequisite to disqualification in all cases. As discussed in text, Nationwide has not met its burden under either approach.

about ... any issue in this case."); *id.* at 693 ("There is no evidence in the record concerning these allegations [that the present and past matters were substantially related], nor even the proffer of evidence by affidavit or deposition."); *American Can v. Citrus Feed,* 436 F.2d at 1130 (the movants "alleged but did not prove that confidential disclosures made to [former counsel] were substantially related to" the present matter).

In *Duncan v. Merrill Lynch,* the former Fifth Circuit repeatedly stressed the necessity of specific record evidence to carry the movant's burden and the ineffectiveness of general, non-evidentiary assertions. With regard to the "substantial relation" avenue, "the focus of the district court's inquiry should be on the *precise nature* of the relationship between the present and former representations." 646 F.2d at 1029 (emphasis added); *accord id.* at 1031. Thus, "[o]nly when the moving party delineates *with specificity* the subject matters, issues and causes of action presented in the former representation can the district court determine if the substantial relationship test has been met." *Id.* Moreover, " 'the conclusion in a particular case can be reached *only* after painstaking analysis of the *facts* ....' " *Id.* (emphasis added)(quoting *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174 (5th Cir.1979)).

 In contrast, a "catalogue of such generalities [of types of work performed] offers little assistance to a court attempting to ferret out the degree of similarity, if any, between the former representation and the pending case." *Duncan v. Merrill Lynch,* 646 F.2d at 1029. Thus, "the fact that [counsel] used to represent [the movant], even on a variety of matters and over a relatively long period of time, is alone

insufficient to establish the required nexus with the present case." *Id.* Similarly, merely describing the former and present representations as both concerning the client's "procedures for handling margin accounts" is insufficient to show the matters are substantially related, absent an "expla[nation] how the margin account question raised in that [former] case relates to the margin account question presented in the present case." *Id.* at 1030.

The same exacting evidentiary standard holds when, absent a substantial relation between the former and present matters, the movant attempts to show the actual transmission of relevant confidential information to its former counsel. "We conclude [because the past and present matters were not shown to be substantially related] that [the movant] ... *must present evidence* that [former counsel] had access to other information and that such information is relevant to the issues raised in the pending case." *Duncan v. Merrill Lynch,* 646 F.2d at 1031 (emphasis added).

 As noted, there is an irrebuttable presumption that Satterwhite and Erwin received confidential information from Nationwide in the course of their former representation of Nationwide. There is, however, no evidence that any of these former representations are substantially related to the Wade matter.[5] Nor is there any evidence that the confidential information that Satterwhite and Erwin are presumed to have received in the course of their representation of Nationwide on other matters is in fact relevant to Wade's claim.

Instead, Nationwide simply asserts that Satterwhite and/or Erwin, in the course of representing Nationwide, learned confidential information concerning Nationwide's policies, manuals, training and

---

5. Janecky Newell's representation of Nationwide in connection with the Wade claim is of course substantially related to Wade's lawsuit,

but there is no evidence that Satterwhite or Erwin rendered professional services to Nationwide in connection with Wade's claim.

claims-handling procedures, the content and relevance of which have never been shown or even alleged. As in *Duncan,* Nationwide "cannot have [Satterwhite and Erwin] disqualified simply by stating that the firm has knowledge of [Nationwide's] 'practices and procedures.' Instead, it must *prove* that [Satterwhite and Erwin] ha[ve] knowledge of the *particular* practices and procedures which are the subject matter of [Wade's] suit. It can do this either by establishing that the present and previous representations are substantially related or by pointing to specific instances where it revealed relevant confidential information regarding its practices and procedures. [Nationwide] has failed to do either." 646 F.2d at 1032 (emphasis added).

Nationwide elected to present no evidence in support of its motion. At the conclusion of oral argument, Nationwide's counsel expressed satisfaction with the state of the record and declined to supplement it following the hearing. Thus, as a matter of law Nationwide has failed to carry its burden of showing that Satterwhite and/or Erwin obtained relevant confidential information that could require their disqualification.

**B. Appearance of Impropriety.**

■ The bulk of Nationwide's argument is devoted to concerns of confidentiality and conflict of interest. In passing, however, Nationwide suggests that disqualification is required to prevent the appearance of impropriety. (Doc. 19 at 7, 8). Several binding appellate cases have considered motions to disqualify based on this ground. *See Waters v. Kemp,* 845 F.2d at 266 n. 13 (collecting cases). Both the ABA's Model Rules of Professional Conduct and Alabama's Rules of Professional

Conduct, however, have since deleted their provisions concerning the appearance of impropriety in favor of the more precise rules governing client confidences, conflicts of interest and other matters. Thus, disqualification of counsel in this district can no longer be grounded on an appearance of impropriety. *Waters v. Kemp,* 845 F.2d at 265–66; *cf. Cox v. American Cast Iron Pipe,* 847 F.2d at 729 & nn. 5–6 (attorney disqualification in the Northern District of Alabama could be based on the appearance of before the provision was deleted from Alabama's rules).

■ Even were the appearance-of-impropriety ground still viable, it would not aid Nationwide. The first element of this ground is a showing of " 'a reasonable possibility that some specifically identifiable impropriety did occur.' " *Waters v. Kemp,* 845 F.2d at 266 n. 13 (quoting earlier Eleventh Circuit cases). The only impropriety alleged by Nationwide is the potential use of confidential information acquired by Satterwhite and/or Erwin in the course of representing Nationwide.[6] Because Nationwide failed to prove that impropriety, it necessarily failed to prove the first element of the appearance-of-impropriety ground of disqualification. *See, e.g., id.; Duncan v. Merrill Lynch,* 646 F.2d at 1032.

**C. Integrity.**

■ Finally, Nationwide suggests that disqualification is required to protect the integrity of these proceedings. (Doc. 19 at 2, 6). Protecting the integrity of the judicial system, however, is not a separate ground of disqualification. Rather, it is one of several policies supporting the federal courts' enforcement of established ethical rules through the remedy of disqualification. *E.g., Duncan v. Merrill*

---

**6.** Such conduct would satisfy the first element. *Cox v. American Cast Iron Pipe,* 847

F.2d at 731 (collecting cases).

*Lynch,* 646 F.2d at 1027. Absent proof that an ethical violation has occurred, disqualification cannot be ordered simply to safeguard some abstract notion of integrity.

## II. Imputed Disqualification.

Nationwide does not appear to seriously argue that Satterwhite and/or Erwin actually obtained relevant confidential information from Nationwide. Instead, Nationwide focuses on their association with Janecky Newell at a time that Potts was rendering professional services to Nationwide concerning Wade's claim. (Doc. 19 at 2, 5–6). Indeed, at oral argument counsel for Nationwide announced that, "[i]n order to be disqualified, defendants [sic] do not have to show specifically that this counsel had direct access with [sic] this claim but that the firm that is going to be a witness did."

Charlie Potts, as the attorney advising Nationwide concerning its handling of Wade's claim, is of course disqualified from representing Wade in this lawsuit. Moreover, that disqualification is imputed to all other attorneys associated with Janecky Newell, including Satterwhite and Erwin. *E.g., In re Yarn Processing,* 530 F.2d at 89; *accord* Model Rules of Prof'l Conduct R. 1.10(a); Ala. Rules of Prof'l Conduct R. 1.10(a).

Nationwide's argument, however, depends on the mistaken assumption that any imputed disqualification could survive the departure of Satterwhite and Erwin from Janecky Newell. Although unnoted by Nationwide, two older appellate cases appear to support Nationwide's assumption. *See In re Corrugated Container,* 659

F.2d at 1346 ("[K]nowledge is imputed to partners of the lawyer disqualified, even if the partnership is later dissolved . . . ."); *American Can v. Citrus Feed,* 436 F.2d at 1129 ("[L]iability to disqualification extends to partners and employees, and former partners and employees, of th[e] lawyer who participated in the attorney-client relationship.").

 The *American Can* Court relied for this proposition on a since-abandoned version of the ABA's canons of ethics. *See* 436 F.2d at 1128. The *In re Corrugated Container* Court, in turn, relied on *American Can* without explication. *See* 659 F.2d at 1346. Since theses cases were decided, however, the relevant ABA and Alabama rules have been critically modified. As presently configured, a lawyer leaving a firm is disqualified from representing an interest adverse to a former client only if the matter is the same as, or substantially related to, one as to which his former firm rendered professional services to the movant *and* as to which the departing attorney obtained relevant confidential information. Model Rules of Prof'l Conduct R. 1.9(b); Ala. Rules of Prof'l Conduct R. 1.10(b).

As noted, the ethical rules governing motions to disqualify are those adopted by a particular district, and the Southern District of Alabama recognizes the current ABA and Alabama rules. Their rejection of imputed disqualification following an attorney's departure from a firm applies here.[7] Thus, the imputed disqualification of Satterwhite and Erwin is limited to the duration of their association with Janecky Newell, and they cannot be disqualified from representing Wade based on Potts' disqualification from doing so.[8]

7. While federal law governs the *interpretation* of these rules, it cannot *rewrite* them. Thus, *American Can* and *In re Corrugated Container* do not control.

8. Nationwide does not contend that Satterwhite and/or Erwin violated this imputed disqualification by representing Wade during their employment with Janecky Newell, and it is uncontroverted that this lawsuit was filed over four months after Erwin's departure and

## CONCLUSION

"Disqualification is a harsh sanction, often working substantial hardship on the client .... As such, disqualification should be resorted to sparingly ...." *Norton v. Tallahassee Memorial Hospital*, 689 F.2d 938, 941 n. 4 (11th Cir.1982). Nationwide has failed to meet the stringent standard imposed by governing ethical rules as construed by binding precedent. Accordingly, it is recommended that Nationwide's motion to disqualify be **denied**.

The attached sheet contains important information regarding objections to this report and recommendation.

Dated: Aug. 26, 2002.

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. *Objection.* Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing

a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (Applicable Where Proceedings Tape Recorded).* Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

over eight months after Satterwhite's departure.