Annette COX, Mary Jane Seabury, Karen Williams, Brenda Morgan, Beverly Walker, Judy Lockard, Joyce Pandelis, Rebecca Self, Velma Waldrop, Martha (Beth) Earley, Glenda Glenn, Glenda Duncan, Daphne Johnson, Joyce Crane, Patricia Terry, Bernice Huffman, Jewell Smith, Jerri Ogletree, Belinda Black, Rhonda Edwards, Julia Womble, Mary Diane Lee, individually and on behalf of all other class members, et al., Plaintiffs-Appellants,

v.

AMERICAN CAST IRON PIPE COMPANY, a corporation, Defendant-Appellee.

No. 87–7485.

United States Court of Appeals, Eleventh Circuit.

June 16, 1988.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiffs-appellants.

Robert G. Tate, J. Patrick Logan, F.A. Flowers, III, Burr & Forman, Birmingham, Ala., for defendant-appellee.

Before VANCE and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This case presents an appeal from an order disqualifying the plaintiffs' attorney, Robert L. Wiggins, Jr. We find that we have jurisdiction [1] and reverse.

### STATEMENT OF FACTS

Fifteen years ago Annette Cox and others sued the American Cast Iron Pipe Company (ACIPCO) for sex discrimination under Title VII. Following an adverse ruling in 1984, *see Cox v. American Cast Iron Pipe Co.*, 585 F.Supp. 1143 (N.D.Ala.1984), *rev'd in part and vacated in part,* 784 F.2d 1546 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986), the original counsel for the plaintiffs withdrew and Wiggins was hired to prosecute the appeal to this court. He has continued to represent the plaintiffs after the successful appeal and remand to the district court.

ACIPCO is represented by the law firm of Burr & Forman.[2] Between 1972–1980 Burr & Forman employed a lawyer named Robert F. Childs, Jr., first as an associate and then as a partner. While Childs worked for the firm, ACIPCO was involved in a substantial amount of Title VII litigation. Chief among the cases was *Pettway v. American Cast Iron Pipe Co.*, 721 F.2d 315 (11th Cir.1983), *cert. denied sub nom. Daniel v. Pettway,* 467 U.S. 1243, 104 S.Ct. 3515, 82 L.Ed.2d 824 (1984), a lawsuit involving claims of race discrimination that reached this court six times during its 18 year career. Between 1978–1980 Childs worked extensively on the *Pettway* case,

and in 1980 he negotiated a consent decree with Wiggins, who also represented the *Pettway* plaintiffs. In addition, Childs billed ACIPCO for 52 hours of work on this (the *Cox*) case in 1980. Childs instructed ACIPCO management on the procedures for conducting a pre-certification poll and filed a motion requesting the district court to continue the class certification hearing.

On October 16, 1980, Childs left Burr & Forman and for the next five years practiced law by himself. On October 15, 1985, Childs merged his practice with that of Wiggins, both lawyers becoming partners in the firm of Gordon, Silberman, Wiggins & Childs. Shortly before the merger, with the initial *Cox* appeal pending, Wiggins and Childs asked Burr & Forman if it objected to the merger. The firm indicated that it did not. Gordon, Silberman then adopted a policy segregating Childs from all aspects of the *Cox* litigation, denying him access to meetings, communications, documents, and fees, and completed the merger.

In 1986, the ever present Wiggins became plaintiffs' counsel in *Beavers v. American Cast Iron Pipe Co.*, No. CV 86–AR–1982–S (N.D.Ala. filed Oct. 24, 1986), a sex discrimination case brought by several *male* employees of ACIPCO. Shortly thereafter, the district court sua sponte "raised the possibility of a conflict of interest by Mr. Wiggins' firm ... occasioned both by Mr. Wiggins' association with Mr. Childs and by the potential for conflict between Beavers and his putative male class and Cox and her certified female class." *Cox v. American Cast Iron Pipe Co.*, No. CV 74–AR–469–S, mem. op. at 3 (N.D.Ala. May 7, 1987) [*Cox II*]. ACIPCO addressed the conflict issue in a December 19, 1986 letter to the district court. The letter did not mention any conflict problems arising from the partnership of Wiggins and Childs and specifically stated that "it does not appear that [Wiggins'] representa-

---

**1.** *See* 28 U.S.C. § 1292(b); *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 435, 105 S.Ct. 2757, 2763, 86 L.Ed.2d 340. The district court certified the case for interlocutory appeal and a motions panel of this court granted the plaintiffs' petition for permission to appeal under section 1292(b).

**2.** The Burr & Forman firm was also known as Thomas, Taliaferro, Forman, Burr & Murray during some of the events involved in this appeal. All references to the firm, however, shall be to "Burr & Forman."

tion of employee classes and individuals in employment discrimination litigation against [ACIPCO] presents an actual conflict of interest with respect to [ACIPCO]." (R 1–8 App. H). Nevertheless, in order to alleviate the district court's concerns, Wiggins and his firm withdrew from representing the male plaintiffs in *Beavers*.

Following the May 5, 1986 remand in this case, both sides began preparing for the re-trial on "back pay" mandated by this court. *See Cox*, 784 F.2d at 1562–63. Discovery commenced on June 3, 1986 and a pre-trial conference was held approximately three weeks later. Formal settlement negotiations began in January 1987. Because the negotiations proved unsuccessful, the district court set the cause for trial on May 18, 1987. On April 16, 1987, however, Burr & Forman filed a motion to disqualify Wiggins as counsel for the *Cox* plaintiffs because of his partnership with Childs. The district court, after holding an evidentiary hearing, granted the disqualification motion. From this decision the plaintiffs appeal.

## DISCUSSION

We review this case by "applying the 'clearly erroneous' test to issues of fact while carefully examining a [d]istrict [j]udge's application of relevant legal standards." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir.1976)[3]; *see also United States v. Hobson*, 672 F.2d 825, 827 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). As is the situation in many disqualification cases, the pertinent facts here are largely undisputed. "Consequently, we are empowered in this case to determine whether the [d]istrict [c]ourt's disqualification order

was predicated upon a proper understanding of applicable ethical principles." *Woods*, 537 F.2d at 810.

Canon 4 of the American Bar Association's Code of Professional Responsibility[4] obligates an attorney to preserve the confidences and secrets of both current and former clients. The purpose of the rule, of course, is to encourage communication between the client and attorney. "Whenever an attorney seeks to represent an interest adverse to that of the former client, the possibility arises that the attorney, whether intentionally or inadvertently, will reveal to his present client confidential information entrusted to him during his previous representation." *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1027 (5th Cir. Unit B), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). Thus, whenever an attorney opposes a former client, the attorney-client relationship sought to be promoted by Canon 4 is implicated.

The ethical rules do not preclude an attorney from ever representing an interest adverse to that of a former client, however. Using Canon 4 as a guide, this court has developed a two-prong test for disqualification of counsel: first, the party seeking disqualification must prove that it once enjoyed an attorney-client relationship with the opposing lawyer; and second, the movant must "'show that the matters embraced within the pending suit are *substantially related* to the matters or cause of action wherein the attorney previously represented [it].'" *Id.* at 1028 (quoting *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977). This test recognizes that many times there exists no genuine threat that

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

**4.** We recognize that the American Bar Association (ABA) replaced its Code of Professional Responsibility with the ABA Model Rules of Professional Conduct in August 1983. *See Waters v. Kemp*, 845 F.2d 260, 263 n. 9 (11th Cir.1988). However, in the Northern District of Alabama, attorneys are governed by the ethical

limitations and requirements of the Alabama State Bar and, only to the extent not inconsistent with those rules, by the ABA Model Rules of Professional Conduct. *See* Rule 7(a)(4), Rules of the United States District Court, Northern District of Alabama. The Alabama rules retain the language of Canon 4 of the ABA Code of Professional Responsibility. *See* Code of Professional Responsibility of the Alabama State Bar Canon 4 (1984), *reprinted in* The Alabama Lawyer, Nov. 1987, at 30.

any confidences of the former client would be disclosed to its adversary. At the same time, however, it prevents the client from being forced to reveal the confidences as a prerequisite to disqualification of its former attorney.

Because the test developed under Canon 4 seeks to protect the former client, that client may either explicitly or implicitly waive its benefits. As the court stated in *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976):

> A former client may consent to the employment of the attorney by an adverse party even where the former client is involved in the case as a party.... [T]his might typically occur where the former client realizes that any prior disclosures will not prejudice him in the new case. Such consent will prevent the disqualification of the attorney even in a criminal case.

Moreover, a failure to make a timely objection may also result in a waiver. *See id.* at 90; *see also Trust Corp. v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir.1983); *Redd v. Shell Oil Co.,* 518 F.2d 311, 316 (10th Cir.1975); *Glover v. Libman,* 578 F.Supp. 748, 760 (N.D.Ga.1983).

> A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed.

*Jackson v. J.C. Penney Co.,* 521 F.Supp. 1032, 1034–35 (N.D.Ga.1981) (citations omitted).

Canon 9 of the ethical rules states that "[a] lawyer should avoid even the appearance of professional impropriety."[5] Under its strictures lawyers may be disqualified if the court finds (1) some specifically identifiable appearance of improper conduct and (2) that "the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case." *Woods,* 537 F.2d at 813 & n. 12. Canon 9 is designed not to protect the former client but to preserve the public's confidence in the judicial system and the legal profession. *See id.* at 813. Because the benefits of the rule extend to the public at large, a party to litigation cannot waive its violation. *See Hobson,* 672 F.2d at 829.

The district court's memorandum opinion did not explicitly mention either Canon 4 or Canon 9. The relationship between Wiggins and Childs, however, merits discussion under both.[6] We, therefore, shall address each rule in turn.

## A. *Canon 4*

As noted earlier, disqualification under Canon 4 may occur if the movant proves (1) that an attorney-client relationship previously existed with the opposing lawyer and (2) that the matters old and new are "substantially related." The facts are clear in this case that Wiggins has never represented ACIPCO. However, it is equally clear that Wiggins' current partner, Childs, participated in an attorney-client relationship with ACIPCO. Because Childs *actually* represented ACIPCO, he is charged with the virtually unrebuttable presumption that he has received confidential information from the company. *See Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1577 (Fed.Cir.1984). In addition, Childs' knowledge may be imput-

5. Although the language of Canon 9 has been deleted from the ABA Model Rules of Professional Conduct, it remains a part of the Alabama disciplinary rules. *See* Code of Professional Responsibility of the Alabama State Bar Canon 9 (1984), *reprinted in* The Alabama Lawyer, Nov. 1987, at 45.

6. In *Waters v. Kemp,* 845 F.2d 260, 265 & n. 13 (11th Cir.1988), this court held that a purported

Canon 9 violation could not be used as a ground for disqualification in the Southern District of Georgia. Attorneys appearing before that court were subject only to the ABA Model Rules of Professional Conduct. *See id.* at 263 n. 9. In the Northern District of Alabama, however, attorneys are subject to Alabama's rules, which retain the Canon 9 language. *See supra* note 5.

ed to his current partners and employees.[7] *See American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1129 (5th Cir.1971); *see also In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1346–47 (5th Cir. Unit A Oct. 1981); *cf. Mallard v. M/V "Germundo",* 530 F.Supp. 725, 727 (S.D. Fla.1982), *aff'd mem.,* 746 F.2d 813 (11th Cir.1984) (discussing Canon 4 and Canon 9 together). Thus, even though ACIPCO has never been a Wiggins client, it may be treated as a former one for the purposes of Canon 4. *See American Can Co.,* 436 F.2d at 1129.[8]

The second prong of the test requires that ACIPCO prove that the matters handled by Childs previously are "substantially related" to the issues in the current litigation. ACIPCO notes that Childs was exposed to its employment practices while he worked on company matters and that Childs actually helped develop ACIPCO's pre-certification poll conducted in this case. Moreover, Childs negotiated the 1980 consent decree on ACIPCO's behalf in the *Pettway* case. As this court noted in the previous *Cox* appeal, a "difficult question" exists regarding whether certain class members who obtained relief in *Pettway* could also prevail in this litigation. *See Cox,* 784 F.2d at 1561. Because of his efforts in *Pettway* and his prior work on this case, ACIPCO argues, Childs has represented the company in matters substantially related to those being litigated here.

In *Duncan,* 646 F.2d at 1029, the court stated that "[o]nly when the moving party delineates with specificity the subject matters, issues, and causes of action presented in former representation can the district court determine if the substantial relationship test has been met." Again, the district court did not explicitly decide whether

ACIPCO sufficiently showed the issues to be substantially related. Fortunately, however, we need not reach this question. For purposes of this portion of the opinion, we will *assume* that ACIPCO has met its burden of proof.

According to the plaintiffs, ACIPCO waived its right to seek disqualification under Canon 4. The district court rejected this argument, however, stating: "Perhaps it would have been preferable for ACIPCO to seek Mr. Wiggins' disqualification sooner than it did, but a conflict-of-interest as serious and pervasive as this one cannot be waived, particularly in a class action." *Cox II,* mem. op. at 6. To the extent this remark refers to Canon 4, it is, of course, error. We noted earlier that a former client may waive *any* purported Canon 4 violation, even a "serious and pervasive" one.[9] In any event, we agree with the plaintiffs that ACIPCO has, in fact, waived its right to seek disqualification of Wiggins under Canon 4.

▮ The undisputed evidence in this case shows that in September 1985 both Wiggins and Childs asked Burr & Forman if it objected to the merger of their law practices. At this time the *Cox* litigation was 11 years old, and the merger of Wiggins' and Childs' practices had not yet occurred. Burr & Forman indicated on behalf of ACIPCO that it did not object to the merger. This act in itself might be sufficient to constitute an express waiver of Canon 4; however, other facts support our conclusion as well. In December 1985, the district court raised the disqualification issue on its own motion, "occasioned both by Mr. Wiggins' association with Mr. Childs and by the potential for conflict" between *Bea-*

---

7. *See infra* note 11.

8. In *American Can,* this court refused to re-impute knowledge to the new partners of a vicariously disqualified attorney. *See American Can,* 436 F.2d at 1129. As discussed later, we have assumed that Childs had actual knowledge of ACIPCO confidences. Thus, Childs would be *directly,* rather than *vicariously,* disqualified from representing the plaintiffs, and we would need only to impute the knowledge once to reach Wiggins.

9. We do not suggest by this statement that this case presents a "serious and pervasive" conflict. *See infra* part B. Moreover, the fact that this is a class action is of no significance. Although the court has a duty to protect absent class members, it is the *defendant,* rather than the class, that was argued to have waived its right to object here.

*vers* and *Cox.* *Cox II,* mem. op. at 3. ACIPCO drafted a letter to the court addressing the conflict issue. Nowhere in its representations to the court did ACIPCO mention any concern about the relationship between Wiggins and Childs, even though discovery was underway. Finally, ACIPCO waited 18 months after the merger before filing the disqualification motion. At the time, trial was scheduled to begin 32 days later.

ACIPCO argues that its delay in filing for disqualification was reasonable. According to the company, when the merger occurred the case was already on appeal to this court. Waxing optimistic, ACIPCO asserts that had it prevailed in this court (or in the Supreme Court) only attorney's fees, costs, and other minor issues would have remained. Thus, argues ACIPCO, there was no need for it to seek disqualification of Wiggins at that time. Shortly after the Supreme Court denied certiorari the parties began settlement negotiations. Principally citing *Kearns v. Fred Lavery Porsche Audi, Inc.,* 745 F.2d 600, 605 (Fed.Cir. 1984), *cert. denied,* 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 971 (1985), ACIPCO contends that, because it filed the motion shortly after settlement negotiations terminated unsuccessfully, its delay was excusable.

The greatest difficulty with ACIPCO's argument is that it only addresses the reasons for the company's delay in filing the motion. ACIPCO does not seek to explain why it did not object to the merger when queried by Wiggins and Childs [10] and why it remained silent when the district court raised the disqualification issue. This court has indicated that waiver is appropriate "where the former client, having every opportunity to do so, fails to object to a new relationship involving [its] former attorney." *Yarn Processing,* 530 F.2d at 90. As we read the record, ACIPCO had "every opportunity" to object, but failed to do so. Therefore, we hold as a matter of law that ACIPCO waived its right to seek disqualification under Canon 4.

### B. *Canon 9*

█ Our holding concerning Canon 4 does not end the inquiry, however. As discussed earlier, parties to litigation cannot waive violations of Canon 9. Rather, in every case where a specifically identifiable appearance of impropriety exists the court must weigh the likelihood of public suspicion against the social interests in obtaining counsel of one's choice. *See Woods,* 537 F.2d at 813 & n. 12; *see also United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). In several cases courts have used Canon 4 violations to establish the first prong under Canon 9, since a violation of the attorney-client relationship constitutes a "specifically identifiable appearance of improper conduct." *See Kitchin,* 592 F.2d at 904; *see also Corrugated Container,* 659 F.2d at 1345; *Church of Scientology v. McLean,* 615 F.2d 691, 693 (5th Cir.1980). Again, we will *assume* that the relationship between Wiggins and Childs has some appearance of impropriety, so that we may focus on the second prong of the Canon 9 test.

"A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods,* 537 F.2d at 810. In this case we have identified a number of factors that together weigh heavily against disqualification. As the district court noted, the age of this case counsels against continued delay. Annette Cox and her class members have already litigated for 14 years. They have been required to seek new counsel once when their original lawyers decided not to handle the initial appeal to this court. Moreover, Wiggins has now

---

10. There is no indication in the record that Burr & Forman reserved its right to object to the relationship between Wiggins and Childs at some later date. Although the firm may have had complete confidence in ACIPCO's position in the initial appellate litigation, we find it difficult to believe that Burr & Forman did not consider the consequences of a reversal by this or the Supreme Court.

represented the plaintiffs for four years. The relationship he has developed with his clients and the substantial energy he has expended in reviewing for and perfecting the appeal and preparing for trial cannot be taken lightly.

In addition, we note that five years passed between the time Childs left Burr & Forman and the time he became associated with Wiggins. Thus, unlike most reported cases, this does not present a situation where a lawyer has directly "switched sides." Childs is not representing the plaintiffs here; instead, this is a case where we must impute his knowledge to Wiggins. Finally, Childs has been screened from all involvement in this litigation.[11] He has no access to any discussions, meetings, or documents had or obtained in *Cox* and will not receive any of the fees generated by the representation.

■ ACIPCO's conduct presents an additional consideration here. Although a party cannot waive the court's duty to the public, its actions may be a factor in the overall balancing. As one court has stated, "[t]here may be some situations where the client has so clearly consented that disqualification would raise more public suspicion than it would quell." *Corrugated Container*, 659 F.2d at 1349. Such is the case here. ACIPCO did not object to the merger before it was consummated and elected not to discuss the matter when responding to the district court's inquiry. Instead, it allowed discovery to proceed until shortly before trial. Only then did the company ask that Wiggins be required to withdraw —"in an atmosphere which ... cast[s] a shadow over the trial itself." *Redd*, 518 F.2d at 316.

We agree that the public's confidence in the judicial system and the legal profession may be tarnished by the events that have occurred during the course of this litigation. However, whatever tarnishment that has occurred may be attributed to ACIPCO rather than to Wiggins and Childs. "Indeed, the more frequently a litigant is de-

layed or otherwise disadvantaged by the unnecessary disqualification of [her] lawyer under the appearance of impropriety doctrine, the greater the likelihood of public suspicion of both the bar and the judiciary." *Woods*, 537 F.2d at 813. We decline to further the tarnishment by affirming the decision disqualifying the plaintiff's counsel.

The judgment of the district court, therefore, is REVERSED.

---

11. In light of our holding, we decline to discuss the plaintiffs' argument that the erection of a "Chinese Wall" is sufficient in and of itself to

prevent the disqualification of Wiggins. *See, e.g., Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir.1983); *see also Panduit*, 744 F.2d at 1580.