# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| THE HAWK MOUNTAIN TRUST DATED | : | |
| DECEMBER 12, 2002, SURVIVING TRUST, | : | C.A. No. 7334-VCP |
| AND THE JUDE MIRRA TRUST UNDER THE | : | |
| HAWK MOUNTAIN TRUST DATED | : | |
| DECEMBER 12, 2002, MERGED TRUST | : | |

## MEMORANDUM OPINION

Submitted: April 27, 2015
Decided: September 8, 2015

Sharon Oras Morgan, Esq., Vincent J. Poppiti, Esq., Carl D. Neff, Esq., Leslie Spoltore, Esq., FOX ROTHSCHILD LLP, Wilmington, Delaware; *Attorneys for Petitioners Bruce Kolleda and Joseph A. Troilo, Jr., Co-Trustees of the Hawk Mountain Trust*.

David J. Ferry, Jr., Esq., Rick S. Miller, Esq., FERRY, JOSEPH & PEARCE, P.A., Wilmington, Delaware; *Attorneys for Respondent Kimberly Jordan.*

Paul D. Brown, Esq., CHIPMAN, BROWN, CICERO & COLE, LLP, Wilmington, Delaware; *Attorneys for Respondents Kimberly Jordan and Carlyn S. McCaffrey.*

Frank E. Noyes, II, Esq., OFFIT KURMAN, P.A., Wilmington, Delaware; *Attorneys for Interested Party Fineburg Law Associates PC.*

**PARSONS, Vice Chancellor.**

Before this Court is the petitioners' motion for the final reimbursement of attorneys' fees, costs, and expenses. This case involved a dispute over the true beneficiary of a Delaware trust, and the release and judicial discharge of the petitioners in their capacity as co-trustees of the trust. The petitioners seek to have more than $1 million paid by the trust or other parties to their attorneys and another professional. The respondents are beneficiaries of the trust, and they oppose the petitioners' motion on a number of grounds.

For the reasons set forth below, I conclude that, for the most part, the fees incurred by the petitioners for professional services are subject to reimbursement by the trust. In a few minor instances, that is not the case. In addition, I find that the amounts charged for the reimbursable services were reasonable, and should be paid. I therefore grant the petitioners' motion for final reimbursement of attorneys' fees, costs, and expenses, subject to the exceptions specifically noted in this Memorandum Opinion.

## I.        BACKGROUND

### A.        The Parties

The petitioners in this action are Bruce Kolleda and Joseph A. Troilo, Jr. ("Petitioners"), co-trustees of the Hawk Mountain Trust (the "HM Trust" or "Trust"). The respondents are Kimberly Jordan and the Intercession Trust, as represented by its trustee Michelle Mitchell ("Respondents"). Respondents are beneficiaries of the HM Trust.

1

## B.     Facts

On December 2, 2002, Gigi Jordan and Petitioners created the HM Trust in Pennsylvania, for the purpose of effectuating an inheritance tax reduction for the then-living son of Gigi Jordan, Jude Mirra ("Mirra"). The Trust is governed by Delaware law.[1] On December 3, 2002, Gigi Jordan formed the Hawk Mountain LLC, a Delaware limited liability company (the "HM LLC" or "LLC") and executed the Operating Agreement.[2] Gigi Jordan was the manager and sole member of the LLC. By November 2009, the Trust owned all of the outstanding interests or units of the HM LLC as its sole asset, with Gigi Jordan still acting as the LLC's manager.[3] Respondent Kimberly Jordan is Gigi Jordan's mother.

Mirra died on February 5, 2010, and shortly thereafter, Gigi Jordan was accused of his murder. Throughout this litigation, she has been incarcerated at Riker's Island in New York, New York. After Mirra's death, a dispute developed relating to the HM Trust and HM LLC, which included questions as to the identity of the Trust's beneficiary.[4] Bernard Eizen, Esq., who previously assisted Gigi Jordan in establishing both the HM Trust and HM LLC, represented Petitioners, and Gigi Jordan retained her own counsel. In February 2010, the parties engaged in settlement negotiations as to the distribution of

---

[1]     Pet'rs' Corrected Reply in Further Supp. of Their Mot. for Fees ("Pet'rs' Corrected Reply") Ex. D.

[2]     *Id.* Ex. R.

[3]     Compl. ¶ 13.

[4]     Compl. ¶ 6.

the Trust corpus. Eizen drafted a proposed Receipt, Release, Indemnification, Waiver of Accounting and Trust Termination Agreement for the parties to sign.[5] In the midst of the Trust settlement negotiations, Eizen and Petitioners filed a Certificate of Cancellation for the LLC. In August 2010, Petitioners filed a Certificate of Correction, reversing the cancellation, because only Gigi Jordan, as manager, could cancel the LLC, and Petitioners failed to get her approval.[6] In addition to working on the settlement negotiations and cancellation of the HM LLC, Eizen also assisted Petitioners with the creation of the Conundrum Trust for the benefit of Gigi Jordan's ex-husband's, Ray Mirra, children.[7]

Settlement negotiations over the distribution of the Trust corpus ultimately failed.[8] In August 2011, Petitioners filed an action in the Court of Common Pleas of Delaware County, Pennsylvania, seeking Court approval: (i) to sell and distribute the HM Trust's assets; (ii) to compel the LLC to pay the outstanding expenses and liabilities of the Trust; (iii) to confirm Petitioners' accounting; and (iv) to discharge Petitioners from further

---

[5] Pet'rs' Corrected Reply Ex. G.

[6] *See* Pet'rs' Mot. for Final Reimbursement of Att'ys' Fees, Costs and Expenses ("Pet'rs' Mot. for Fees") Ex. C, FLA Invoice dated Aug. 23, 2010, at 2.

[7] *See id.* Ex. C, FLA Invoice dated May 13, 2010, at 2.

[8] Pet'rs' Mot. for Fees 3.

3

responsibilities as co-trustees (the "Pennsylvania Action").[9] On February 13, 2012, the Pennsylvania Action was dismissed on jurisdictional grounds.[10]

On March 16, 2012, Petitioners commenced this action by filing their Verified Complaint (the "Complaint") in the Delaware Court of Chancery, seeking essentially the same relief they sought in the Pennsylvania Action. Respondents opposed Petitioners' request for a release and judicial discharge based on objections to the scope of the requested release, and allegations of fraud and forgery against Petitioners. Early on in this litigation, Petitioners clarified that they sought a release only as to their activities as co-trustees and not with respect to any actions they might have taken in their individual capacities.[11] It proved much more difficult, however, to pin Respondents down on the contours of their allegations of fraud and forgery against Petitioners. As a result, I ordered Respondents to assert any potential causes of action against Petitioners related to the HM Trust or to actions they took in their capacity as co-trustees by November 21, 2012.[12] I later extended this deadline to March 15, 2013.[13] Respondents failed to state any claim of fraud or forgery against Petitioners in their capacity as co-trustees by that deadline.

---

[9] Pet'rs' Corrected Reply Ex. K.

[10] *Id.* Ex. N.

[11] Compl. ¶ 45.

[12] Order Granting Case Sched. ¶ 1, Docket Item ("D.I.") 37.

[13] Order Granting Stip. Third Amend. Case Sched. ¶ 1, D.I. 120.

In the context of Respondents' vague allegations against them, Petitioners sought to depose Gigi Jordan to better understand those allegations and any claim she or Respondents had against them. During a September 21, 2012 teleconference, I found that Gigi Jordan's deposition was relevant to this action,[14] and on October 24, 2012, I authorized issuance of a commission for that deposition.[15] On November 30, 2012, the New York Supreme Court issued an order allowing Petitioners to proceed with the deposition, but requiring that the transcript be placed under seal and no quotes be used or referred to until the criminal proceeding was concluded.[16] Petitioners decided, however, not to proceed with Gigi Jordan's deposition.[17] On December 23, 2013, Gigi Jordan filed suit against Petitioners in the U.S. District Court for the District of Delaware under the Racketeer Influenced and Corrupt Organization Act[18] (the "RICO Act"), alleging fraud and forgery.[19] That case is still pending in federal court.

---

[14] Sept. 21, 2012 Teleconf. Tr. 22.

[15] Order Granting Iss. of Comm'n for Dep. of G. Jordan, D.I. 45 [hereinafter Order Granting Iss. of Comm.'n].

[16] *IMO Kolleda*, 2012 WL 6221147 (N.Y. Sup. Nov. 30, 2012).

[17] Pet'rs' Corrected Reply 15.

[18] 18 U.S.C. §§ 1961 to 1968.

[19] Ltr. to Ct. from Kurt M. Heyman Encl. Copy RICO Compl., D.I. 182.

On October 31, 2013, Petitioners moved for summary judgment in this action.[20] After hearing argument on that motion, I delivered an oral ruling on it on July 21, 2014.[21] In that ruling, I held that: (i) Kimberly Jordan was the sole beneficiary of the HM Trust; (ii) Respondents waived all claims against Petitioners in their official capacity as co-trustees of the HM Trust and as members of the HM LLC; and (iii) Petitioners were entitled to a release and judicial discharge in their capacities as co-trustees and members of the HM LLC.[22] From the time this action was filed until Petitioners' motion for summary judgment was resolved, the HM LLC held approximately $7 million in a brokerage account with Merrill Lynch. In the July 21 summary judgment ruling, I ordered that 1,000 shares of the LLC be distributed to Kimberly Jordan as the Trust corpus, and that $1.5 million of the LLC funds in the custody of Merrill Lynch be transferred to, and held in escrow by, a third party.[23]

On August 7, 2014, I entered an implementing order based on my July 21 rulings. As to the funds held in escrow by the third party, the order stated they were:

> for the purpose of paying administrative fees and costs of the Trust, including payment of Petitioners' attorneys' fees and costs ("Administrative Expenses"), subject to Respondents objections as to the amount of attorneys' fees and costs to Fox Rothschild LLP and as to whether Eizen Fineburg &

---

[20] Pet'rs' Mot. for Summ. J. and Other Rel. Relief, D.I. 166.

[21] July 21, 2014 Teleconf. Tr.

[22] *Id.* at 27-49.

[23] The funds at Merrill Lynch not transferred to the escrow agent were to be distributed to Kimberly Jordan.

6

> McCarthey [sic] and Joseph P. McDonald, Esq. are entitled to any attorneys' fees and costs whatsoever.[24]

The order further stated that "[a]ny Escrow Funds remaining after payment of Administrative Expenses and resolution of any disputes related to such expenses shall be paid to Kimberly Jordan."[25]

On August 13, 2014, Petitioners moved for the final reimbursement of attorneys' fees, costs, and expenses (the "Motion"). From the time of Mirra's death in February 2010 through April 27, 2015, Petitioners have incurred $1,100,954.04 in attorneys' and other professionals' fees, costs, and expenses related to this litigation and their attempts to dissolve the HM Trust.[26] On April 27, 2015, after receiving further briefing from Respondents and Petitioners, I heard argument on the Motion.[27]

## II. ANALYSIS

Petitioners employed a number of firms during the relevant time period. Those firms and the respective fees claimed to be owed to each of them are as follows: (1) Fox Rothschild LLP ("Fox Rothschild") $957,153.59; (2) Fineburg Law Associates, P.C.,

---

[24] Order Granting in Part Pet'rs' Mot. for Summ. J. and Other Relief ¶ 2, D.I. 283 [hereinafter Order Granting Summ. J.].

[25] *Id.*

[26] Petitioners originally claimed $1,078,538.27 in attorneys' fees incurred through September 26, 2014. *See* Pet'rs' Corrected Reply 16. Fox Rothschild LLP submitted an additional invoice for the period from September 26, 2014 through April 27, 2015. I have included the fees incurred during that time period in the total amount Petitioners seek in the Motion. *See* Carl D. Neff. Aff. in Supp. of Pet'rs' Mot. for Fees Ex. 3.

[27] Transcript of Oral Argument ("Tr.").

7

formerly Eizen, Fineburg & McCarthy, P.C. ("FLA"), $109,722.46; (3) Flaster Greenburg, P.C. ("Flaster Greenburg") $7,412.49; (4) Joseph P. McDonald, Esq., $15,582.50; and (5) Morris J. Cohen & Co., P.C. ("Morris J. Cohen") $11,083.[28]

## A.     Petitioners' Application for Payment of the Claimed Fees Is Not Premature

As a threshold issue, I address Respondents' contention that Petitioners' fee application is premature. Respondents argue that Petitioners' application should be deferred until the conclusion of Gigi Jordan's federal RICO action.[29] The outcome of the RICO action, however, is unlikely to have any bearing on this case, because that action involves allegations against Petitioners in their individual capacities. This case is limited in scope to actions taken by Petitioners in their capacity as co-trustees of the HM Trust.[30] Therefore, I conclude that Petitioners' fee application is not premature and should proceed notwithstanding the pending federal RICO action.

## B.     Are the Claimed Fees Reimbursable?

### 1.     Legal standard

Petitioners advance four separate arguments for having the fees and expenses they claim paid to the professionals involved by the Trust or an interested party. The first two grounds stem from the common law.

---

[28]    In their opposition, Respondents did not object to the payment of $11,083 to Morris J. Cohen or the reasonableness of its fees; therefore, I will grant Petitioners' request for reimbursement of these fees without further comment.

[29]    Resp'ts' Resp. in Opp'n to Pet'rs' Mot. for Fees ("Resp'ts' Opp'n") 27.

[30]    *See* Order Granting Summ. J. ¶ 4(b).

Under traditional Delaware law the payment of attorneys' fees out of the trust corpus has generally been proper in two circumstances: (i) where the attorney's services are necessary for the proper administration of the trust, or (ii) where the services otherwise result in a benefit to the trust. In either circumstance the trustee may charge the trust estate with the expenses of litigation, even if the litigation is unsuccessful.[31]

The third ground Petitioners rely on for reimbursement of the claimed attorneys' fees, costs, and expenses is statutory in nature. Specifically, 12 *Del. C.* § 3584 provides that "[i]n a judicial proceeding involving a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorneys' fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

Finally, Petitioners contend they are entitled to recover their attorneys' fees and expenses under the American Rule. In that regard, I note that:

Delaware follows the American Rule and litigants must pay their own attorneys' fees and costs. As an equitable exception to the American Rule, however, this Court may grant attorneys' fees if it finds that a party brought litigation in bad faith or acted in bad faith during the course of the litigation. Still, this Court does not lightly award attorneys' fees under this exception, and has limited its application to situations in which a party acted vexatiously, wantonly, or for oppressive reasons.[32]

---

[31]  *Merrill Lynch Trust Co., FSB v. Campbell*, 2009 WL 2913893, at *11 (Del. Ch. Sept. 2, 2009) (internal citation omitted) (citing *Bankers Trust Co. v. Duffy,* 295 A.2d 725, 726 (Del. 1972)).

[32]  *Postorivo v. AG Paintball Hldgs., Inc.*, 2008 WL 3876199, at *24 (Del Ch. Aug. 20, 2008).

9

Because I base my conclusions primarily on the applicable principles of Delaware common law, and secondarily on 12 *Del. C.* § 3584, I do not reach Petitioners' argument for fees under the American Rule.

### 2. Application

Respondents argue generally that Petitioners' attorneys' fees, costs, and expenses are not reimbursable, because Petitioners' administration of the Trust was "a front to carry out a widespread unlawful fraudulent enterprise to misappropriate assets of the Trust."[33] Respondents have not proven this contention, and have failed to plead it in a timely manner. Rather, they steadfastly avoided providing a clear statement of their substantive claims against Petitioners as co-trustees for a long period of time. In addition, Respondents have had three separate teams of counsel and contributed significantly to the multi-year duration of this litigation and a docket that contains more than 300 entries. I find that Petitioners, on the other hand, necessarily utilized the services of professionals to determine the proper beneficiary of the HM Trust,[34] and reasonably sought a release as co-trustees from a trust in which they effectively had no control over its sole asset, the HM LLC. Therefore, I conclude that the fees and expenses Petitioners incurred for the services of attorneys and accountant generally were necessary for the proper administration of the HM Trust.

---

[33]    Resp'ts' Opp'n 17.

[34]    *See In re IMO Trust for Grandchildren of Gore*, 2013 WL 771900, at *3 (Del. Ch. Feb. 27, 2013).

10

Alternatively, Respondents dispute the reimbursability of certain fees incurred for specific services that they contend were not necessary for the proper administration of, or did not confer a benefit to, the Trust.[35] I address the merits of each of those challenges next.

### a. The Pennsylvania Action

Petitioners owe $15,582.50 to Joseph P. McDonald in connection with the Pennsylvania Action.[36] Respondents argue these fees are not reimbursable, because that action never should have been brought, as demonstrated by the fact that it was dismissed.[37] Because the Trust was created in Pennsylvania, Petitioners had at least a colorable basis for bringing the action there. Further, the Pennsylvania Action, while arguably not necessary for the proper administration of the Trust, did result in some benefit to the Trust. The Delaware complaint is almost identical to the complaint filed in Pennsylvania.[38] It is reasonable, therefore, to infer that Petitioners' counsel drew heavily from the Pennsylvania complaint in drafting the Complaint filed here. Thus, most of the time and effort put into the Pennsylvania Action were relevant and beneficial to this action in Delaware. For these reasons I agree with Respondents that not all of McDonald's time is reimbursable, but I find that the usefulness of the underlying work

---

[35]     Resp'ts' Opp'n 4.

[36]     Pet'rs' Mot. for Fees Ex. E.

[37]     Resp'ts' Opp'n 26.

[38]     Tr. 35 (Resp'ts' counsel).

11

justifies providing for payment to McDonald of $10,000 of the $15,582.50 fees incurred in connection with the Pennsylvania Action.

### b.      Cancellation of the HM LLC

Petitioners owe at least $2,073 to FLA for services it provided in connection with the cancellation of the HM LLC.[39]  Respondents contend the fees Petitioners incurred in connection with the unauthorized filing of the LLC Certificate of Cancellation and Certificate of Correction are not reimbursable.  Gigi Jordan is the manager of the HM LLC; therefore, Petitioners needed her approval to file a Certificate of Cancellation, which they failed to procure.  Thus, Petitioners' cancellation of the HM LLC, and later reversal of that action, were neither necessary to the proper administration of nor beneficial to the Trust.  I therefore deny Petitioners' application for payment of the fees associated with those actions—*i.e.*, $2,073 of the amount sought for FLA.

### c.      The Conundrum Trust

FLA charged Petitioners $1,344 for work it performed in connection with the Conundrum Trust.[40]   Respondents oppose reimbursement of any fees incurred in connection with the Conundrum Trust.  Because the Conundrum Trust was established as a separate trust by Gigi Jordan's ex-husband, for the benefit of his own children, the fees incurred in relation to the Conundrum Trust are not reimbursable.  The amount requested

---

[39]     This number is based on the representation of Petitioners' counsel at argument, and is also consistent with my review of the invoices submitted by Petitioners. *See* Pet'rs' Mot. for Fees Ex. C.

[40]     This number is based on my review of the FLA invoices submitted by Petitioners. *See* Pet'rs' Mot. for Fees Ex. C.

12

for FLA, therefore, will be reduced by the $1,344 attributable to work done on the Conundrum Trust.

### d. Gigi Jordan's Deposition

Finally, it appears that Petitioners owe $59,951 to Fox Rothschild in connection with preparation for Gigi Jordan's deposition.[41] From August 2012 to February 2013, Petitioners and their counsel explored the possibility of and prepared for that deposition. Respondents argue the fees incurred in connection with attempting to take Gigi Jordan's deposition should not be reimbursed, because Petitioners decided not to take the deposition after "aggressively" fighting to do so. I previously determined, however, that Gigi Jordan's deposition was relevant to this case.[42] Therefore, I find Petitioners' attempts to take that deposition to be neither entirely unnecessary to the proper administration of, nor without benefit to, the Trust. The proposed deposition of Gigi Jordan appeared to be relevant to understanding the nature of the fraud and forgery claims Respondents, who appear to have been aligned with Gigi Jordan, were threatening to bring against Petitioners as co-trustees of the Trust. It was necessary to understand the potential claims against Petitioners to determine the issues regarding the disputed scope of the release and terms for terminating the Trust. On the other hand, while significant

---

[41] This amount is based on my review of invoices submitted by Petitioners. According to the invoice entries, it appears that legal research and other preparation for Gigi Jordan's deposition began in August 2012, and the deposition ultimately was cancelled on February 8, 2013. *See* Pet'rs' Mot. for Fees Ex. B.

[42] Order Granting Iss. of Comm'n.

effort was involved in preparing for Gigi Jordan's deposition, as well as extensive procedural skirmishing, Petitioners decided against taking the deposition, despite the New York Supreme Court's order that they could proceed with it.[43] Based on these circumstances and the fact that there were valid reasons from the outset to question the deposition's ultimate utility, I authorize payment of only 50% of the fees and expenses incurred with respect to Gigi Jordan's deposition. As such, the amount to be paid to Fox Rothschild from the HM Trust will be reduced by $29,975.50.

I do not understand 12 *Del. C.* § 3584 to require a showing of bad faith as generally would be necessary under the American Rule. Having presided over the twists and turns of this multi-year litigation, I find that it also would be appropriate to award fees and expenses under Section 3584.[44] To some extent, the difficulties the parties experienced in achieving agreement on the scope of the release and the propriety of distributing much of the money in the Trust to Kimberly Jordan took much longer than it should have. This was due, in large part, to Respondents' failure to articulate more clearly their potential claims against Petitioners. Thus, I conclude that payment of most of the fees requested is in order under the common law and 12 *Del. C.* § 3584. Hence, I need not address Petitioners' argument for an award of fees under the American Rule. I

---

[43]   *IMO Kolleda*, 2012 WL 6221147 (N.Y. Sup. Nov. 30, 2012).

[44]   *See Merrill Lynch Trust Co., FSB v. Campbell*, 2009 WL 2913893, at *14 n.95 (The statute allows the Court to shift attorneys' fees under a more relaxed standard than that of the American Rule.).

14

note, however, that my preliminary view is that Respondents did not proceed in bad faith, and no fees should be charged against a party other than the Trust.[45]

## C. Respondents' Objections to Fees Based on Counsel's Conflict of Interest Is Waived

Over the course of this litigation, Eizen worked on Petitioners' case at two different firms, FLA and Flaster Greenburg. Respondents contest awarding any fees to either FLA or Flaster Greenburg, because Eizen created an alleged conflict of interest by representing Petitioners despite his former representation of Gigi Jordan.[46]

The Delaware Lawyers' Rules of Professional Conduct ("DLRPC") provide that an attorney owes a duty to former clients to not represent new clients in matters materially adverse to the former client without the former client's informed consent. Under Rule 1.9:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client

---

[45] *See Hardy v. Hardy*, 2014 WL 3736331, at \*18 (Del. Ch. July 29, 2014) ("To satisfy the bad faith requirement, a party's conduct '*must* rise to a high level of egregiousness, such that their actions extend beyond the realm of zealous advocacy.'" (quoting *The Estate of E. Murton Dupont v. Dinneen*, 2008 WL 2950764 (Del. Ch. Mar. 26, 2008)).

[46] Resp'ts' Opp'n 15. In December 2002, Eizen represented Gigi Jordan in creating the HM Trust and the HM LLC. After the death of Mirra, Eizen represented Petitioners in matters regarding the distribution of the Trust corpus and settlement negotiations with Gigi Jordan, who had retained new counsel. There has been no showing, however, that Petitioners personally had an interest in how the Trust corpus was distributed beyond seeking payment of the attorneys' and other professional's fees they incurred in their role as co-trustees.

15

unless the former client gives informed consent, confirmed in writing.[47]

In the litigation context, however, Delaware courts generally waive disqualification claims if the parties fail to assert them in a proper or timely manner.[48]

Petitioners argue that the conflict of interest claim should be considered waived due to the untimely manner in which Respondents asserted it.[49] In April 2010, Gigi Jordan's new counsel, Mark Petersen, raised Eizen's conflict of interest in representing Petitioners in an email.[50] The following month, then-trustee of the Intercession Trust, Carlyn McCaffrey, raised the same issue during a telephone conversation with Eizen.[51] Based on the invoices from his firms, Eizen continued to represent Petitioners until April 2013. In October 2013, Petitioners sought interim reimbursement in this action of attorneys' fees owed to both of Eizen's firms,[52] but Respondents never brought a formal

---

[47] DLRPC R. 1.9(a).

[48] *See Dunlap v. State Farm Fire & Cas. Co.*, 950 A.2d 658, 658 (Del. 2008) (reversing disqualification of counsel when no motion to disqualify was made); *cf. Kenton v. Bellevue Four, Inc.*, 1999 WL 463684, at *1 (Del. Super. Apr. 26, 1999) ("Failure to make a timely objection may result in a waiver of the right to seek disqualification." (citing *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988))).

[49] Pet'rs' Corrected Reply 12; *see also* Suppl. Reply in Supp. of Pet'rs, Mot. for Fees 2.

[50] Pet'rs' Corrected Reply 8.

[51] *Id*. at 10.

[52] Pet'rs' Mot. for Interim Reimbursement of Att'ys' Fees, Costs and Expenses Exs. B and C, D.I. 165.

16

objection to paying Eizen's fees. In their Answering Brief to Petitioners' Motion for Summary Judgment and Other Relief, Respondents stated in a footnote that "Eizen's representation of the Trustees in opposing Jordan's interest was a blatant conflict of interest given his earlier representation of Jordan in connection with the formation of the HM Trust,"[53] but did not raise the issue elsewhere in their brief or suggest that the fees owed to Eizen's firms should be denied on that basis. Respondents only now assert Eizen's conflicted representation as an affirmative defense to Petitioners' fee application.

It is true that Eizen did not obtain Gigi Jordan's informed consent to represent Petitioners in a matter arguably adverse to her interests. But, Respondents failed to raise this issue as a defense to Petitioners' fee application in a timely manner, despite multiple opportunities to do so. As a result, the relevant facts have not been developed, and I find that the defense of conflicted counsel is waived. Respondents are not precluded from raising their conflict of interest charge with the appropriate disciplinary authorities, but that is not an issue for this Court. Therefore, I authorize the payment of all fees owed FLA, except those incurred in connection with the Conundrum Trust and the LLC cancellation, and all fees owed Flaster Greenburg.

## D. Are the Claimed Fees Reasonable?

In addition to the requirement that an attorney's services be necessary for the proper administration of the trust or result in a benefit thereto, the DLRPC provides that

---

[53] Resp'ts' Answering Br. in Opp'n to Pet'rs' Mot. for Summ. J. and Other Relief 7 n.5, D.I. 177.

attorneys' fees, costs, and expenses must be reasonable. DLRPC Rule 1.5 provides in relevant part:

> A lawyer shall not make an agreement for, charge, or collect an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; … (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; … (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.[54]

Respondents argue that the fees on behalf of Petitioners were unreasonable. Given the somewhat unusual nature of this matter involving co-trustees of a trust, the sole asset of which was an LLC that was under the management of an adverse managing member rather than the co-trustees, I disagree. I also note that Respondents vigorously contested numerous aspects of this action through three different sets of attorneys. Thus, I find that the amount of time devoted to this matter on Petitioners' behalf was reasonable.

I also conclude that the amounts charged by Petitioners' attorneys generally were reasonable, but that one aspect of their fee request was not justified adequately. In particular, Petitioners presented no detailed evidence on the following factors of DLRPC Rule 1.5: "(1) … the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;" "(3) the fee customarily charged in the locality for similar legal services;" and "(7) the experience, reputation, and ability of the

---

[54]     DLRPC R. 1.5(a).

18

lawyer or lawyers performing the services." In this case, none of the lawyers in the firms other than Fox Rothschild charged more than $500 per hour for their services. Approximately 11.7% of the time spent by Fox Rothschild involved lawyers charging more than $500 per hour, with the highest rate being $645. Based on the limited record before me, I find that a maximum rate for reasonable attorneys' fees in this matter is $500 per hour. Accordingly, I have capped the reimbursable billing rates for the Fox Rothschild attorneys at $500 per hour. As a result of that adjustment, the amount to be paid to Fox Rothschild has been reduced by $28,178.50 to obtain a revised total for that firm of $898,999.59.

### III. CONCLUSION

For the foregoing reasons, I grant in part Petitioners' motion for final reimbursement of attorneys' fees, costs, and expenses and deny it in part. I hereby order the third party escrow agent, Grover C. Brown, Esq., to distribute from the funds in the escrow account $1,033,800.54 to pay Petitioners' attorneys and accountant listed below the indicated amounts:

| Firm | Amount |
|---|---|
| Fox Rothschild LLP | $ 898,999.59 |
| Fineburg Law Associates | 106,305.46 |
| Morris J. Cohen & Co., P.C. | 11,083.00 |
| Joseph P. McDonald, Esq. | 10,000.00 |
| Flaster Greenburg, P.C. | 7,412.49 |
| Total | $1,033,800.54 |

Any funds remaining in the custody of the escrow agent after those distributions and payment of any administrative fees related to the escrow shall be distributed in

19

accordance with Paragraph 2 of the Order Granting in Part Petitioners' Motion for Summary Judgment and Other Relief.

**IT IS SO ORDERED**.