NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

L.E.B.,                                )

              Appellant,          )

v.                                )         Case No. 2D19-4372

D.D.C.,                       )

              Appellee.           )

_____)

Opinion filed September 25, 2020.

Appeal from the Circuit Court for Lee
County; Amy R. Hawthorne, Judge.

Andrew J. Banyai of Lee County Legal Aid
Society, Fort Myers, for Appellant.

No appearance for Appellee.

VILLANTI, Judge.

        L.E.B. seeks review of the order that disqualified Lee County Legal Aid

Society (Legal Aid) from representing her in this paternity action against D.D.C.

Because D.D.C. waived any right he might have had to seek disqualification of Legal

Aid by waiting for over a year after the start of the proceedings to move for disqualification, we reverse.[1]

**Background**

In July 2017, L.E.B. went to Legal Aid seeking representation in a paternity matter relating to her son with D.D.C. Legal Aid accepted L.E.B. as a client and filed a petition on her behalf against D.D.C. on July 28, 2017. The initial and all subsequent pleadings made clear that L.E.B. was represented by an attorney from Legal Aid.

The parties attended mediation in December 2017, at which L.E.B. was represented by an attorney from Legal Aid. At a continuation of mediation in April 2018, L.E.B. was again represented by an attorney from Legal Aid. The parties failed to reach an agreement on all issues at mediation, and the case was set for trial.

On September 20, 2018, the parties appeared before the magistrate for trial. At the start of the proceedings, D.D.C., who was pro se, made an ore tenus motion to disqualify Legal Aid from representing L.E.B. based on his assertion that he had previously consulted with Legal Aid. The magistrate put D.D.C. under oath, and D.D.C. testified that he went to Legal Aid in June 2016 to consult with them about the same paternity matter involved in this case. He testified that he obtained a written application form, which asked for some basic information about the legal matter and some financial information. He completed the information form and a short financial disclosure form and returned them to Legal Aid in late June 2016. D.D.C. testified that

---

[1]While L.E.B. raised several other grounds for reversal of the order, we decline to address them because the waiver issue is dispositive in this case.

he did not speak with an attorney at that time; he spoke only with an intake clerk. A short time later—around mid-July 2016—he received a letter indicating that his income was too high for him to qualify for the services of Legal Aid. When questioned about his delay in making the motion to disqualify, D.D.C. testified that he had not realized that he was able to move to disqualify Legal Aid until he was getting ready for the trial and spoke with a family friend who is an attorney.

The magistrate also heard argument from the attorney from Legal Aid, who confirmed that D.D.C. had filed an application with them in 2016 but had been denied representation because of his income level. The attorney told the magistrate that Legal Aid no longer had any of the documents submitted by D.D.C. because the Legal Aid office was destroyed during Hurricane Irma. She argued that Legal Aid should not be disqualified from representing L.E.B. for three reasons: (1) the motion to disqualify was untimely since the case had been pending for over a year when the motion was made; (2) D.D.C. had never been a "client" of Legal Aid and did not qualify as a "prospective client," so Legal Aid had no conflict of interest; and (3) D.D.C. would not be prejudiced by denial of the motion because Legal Aid did not have any information that could be used to his disadvantage. The attorney for Legal Aid could not explain why Legal Aid had not identified the potential conflict when L.E.B. first sought representation.

The magistrate took a brief recess to conduct some legal research and then returned, finding that it appeared D.D.C. was a "prospective client" under the Rules Regulating the Florida Bar. The magistrate also found that D.D.C. had not known that he had the right to seek disqualification until just before trial and that he had moved for

disqualification promptly after he learned of the right. Based on these findings, the magistrate continued the trial and explained that he believed that disqualification was required; however, he gave both parties until October 1, 2018, to file additional arguments and authority in support of their respective positions.

L.E.B. filed a timely memorandum in opposition to Legal Aid's disqualification. In that memorandum, L.E.B. raised the same three issues addressed before the magistrate and also argued that her due process rights were violated because the magistrate had entertained the motion despite it not being noticed for hearing and because the magistrate had not held a "proper" evidentiary hearing. D.D.C. did not provide any further arguments, filings, or authority. After reviewing the filings and the transcript of the initial hearing, the magistrate issued a report and recommendations on October 25, 2018, concluding that D.D.C. became a "prospective client" of Legal Aid when he filed his application and financial disclosure form with them and that therefore Legal Aid was barred from representing L.E.B. in the same legal matter.

L.E.B. filed exceptions to the magistrate's report and recommendations. The only issue she specifically raised was that the magistrate's report and recommendations were not supported by competent, substantial evidence. However, L.E.B. also attached to her exceptions her memorandum in opposition to disqualification that she had filed with the magistrate. Therefore, the trial court considered all four issues raised by L.E.B. After reviewing the record and conducting a hearing, the trial court denied the exceptions, adopted the magistrate's report and recommendations, and disqualified Legal Aid from representing L.E.B. in this matter. This appeal follows.

**Analysis**

While L.E.B. raises four grounds for reversal in this appeal, we address only the issue of waiver, which is dispositive.[2]  The law is clear that a litigant can waive the right to seek disqualification of an opponent's attorney by a delay in seeking to enforce the right.

> A motion to disqualify should be made with reasonable promptness after the party discovers the facts which lead to the motion.  Balda v. Sorchych, 616 So. 2d 1114, 1116 (Fla. 5th DCA 1993) (delay of three years in raising conflict deemed waiver); Cox v. American Cast Iron Pipe Co., 847 F.2d 725 (11th Cir. 1988) (delay of nineteen months deemed waiver); Glover v. Libman, 578 F. Supp. 748 (N.D. Ga. 1983) (delay of one year deemed waiver); Jackson v. J.C. Penney

---

[2]We do note that Legal Aid's argument that D.D.C. was not a "prospective client" under the Rules Regulating the Florida Bar is not well taken.  Rule 4-1.18(a) defines a "prospective client" as "[a] person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter."  R. Regulating Fla. Bar 4-1.18(a).  Rule 4-1.18(b) forbids a lawyer who has learned information from a prospective client from using that information even if no attorney-client relationship ensues.  This prohibition applies even when the person receiving the information from the prospective client is not an attorney.  See Matluck v. Matluck, 825 So. 2d 1071, 1073 (Fla. 4th DCA 2002) (holding that if a non-lawyer employee has obtained confidential information that is material to the case, "it ma[kes] no difference that the employee was a secretary and not an attorney" because any "[d]amage done by the disclosure of privileged information is not minimized because the source of the information is clerical staff and not an attorney" (quoting Koulisis v. Rivers, 730 So. 2d 289, 291 (Fla. 4th DCA 1999))); see also Fla. Bar Ethics Opinion 92-1, 1992 WL 602490, at *1, *3 (noting that the duty of confidentiality attaches at the time of the initial consultation and providing that a Legal Aid Society may represent one of two opposing parties who both seek representation only if "each prospective client provide[d] an informed consent acknowledging that certain limited information given in the intake interview will not be treated as confidential for purposes of enabling the Society to screen for conflicts or to make referrals").  Here, it is undisputed that D.D.C. consulted with Legal Aid about the possibility of having Legal Aid represent him in the paternity matter now before the court.  Therefore, D.D.C. was a "prospective client" as defined.  It is also undisputed that Legal Aid did not obtain an informed consent from D.D.C. before accepting his documentation.  We suggest that Legal Aid review Florida Bar Ethics Opinion 92-1 to ensure that its intake procedures comply with its ethical obligations.

Co., Inc., 521 F. Supp. 1032, 1034 (N.D. Ga. 1981) (delay of fifteen months deemed waiver). The rationale behind this rule is to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case. Cox v. American Cast Iron Pipe Co., 847 F.2d at 729 (quoting Jackson v. J.C. Penney Co., Inc., 521 F. Supp. at 1034).

Transmark, U.S.A., Inc. v. State, Dep't of Ins., 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994) (holding that a delay of ten months was sufficient to waive the right to disqualify); see also Zayas-Bazan v. Marcelin, 40 So. 3d 870, 873 (Fla. 3d DCA 2010) (holding that a delay of two and one-half years was sufficient to waive the right to disqualify); Rahman v. Jackson, 992 So. 2d 390, 390-91 (Fla. 1st DCA 2008) (holding that a delay of two years was sufficient to waive the right to disqualify).

Here, D.D.C. was aware of the fact that L.E.B. was represented by Legal Aid from the inception of the case in July 2017. He was also aware that he had previously sought assistance from Legal Aid on the same matter a year earlier. Nevertheless, he did not move to disqualify Legal Aid until the start of trial fourteen months after the case began. When questioned about the reason for the delay, D.D.C. did not contend that he was not aware before then of the facts that would support disqualification. Instead, he contended that, as a pro se litigant, he had not understood the legal ramifications of the facts or that he had the right to move to disqualify Legal Aid from representing L.E.B. This argument, however, carries no weight. See, e.g., Anderson v. Sch. Bd. of Seminole Cty., 830 So. 2d 952, 953 (Fla. 5th DCA 2002) ("Pro se litigants, however, should not be treated differently from litigants in similar situations who are represented by counsel and are charged with knowledge of those rights."); Gladstone v. Smith, 729 So. 2d 1002, 1004 (Fla. 4th DCA 1999) ("A pro se litigant

- 6 -

should not be held to a lesser standard than a reasonably competent attorney."); <u>Kohn v. City of Miami Beach</u>, 611 So. 2d 538, 539 (Fla. 3d DCA 1992) ("[I]t is a mistake to hold a pro se litigant to a lesser standard than a reasonably competent attorney.").

Hence, because D.D.C. was aware of the facts that supported the disqualification of Legal Aid for over a year before he moved to disqualify Legal Aid from representing L.E.B., the trial court should have found that D.D.C. waived any right he had to seek Legal Aid's disqualification. His status as a pro se litigant does not afford him rights over and above those afforded to represented litigants. Therefore, we reverse the order disqualifying Legal Aid as L.E.B.'s counsel and remand for the resumption of proceedings.

Reversed.

SILBERMAN and SLEET, JJ., Concur.